UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSE REED,<br><br>    Plaintiff,<br><br>    v.<br><br>C.O. MCCUTCHEON, *et al.*,<br><br>    Defendants. | CIVIL ACTION NO. 3:25-cv-01801<br><br>(SAPORITO, J.) |

## MEMORANDUM

Jesse Reed, currently incarcerated at SCI-Benner Township, has filed a complaint regarding his conditions of confinement at the York County Prison on April 17 and 18, 2025. (Doc. 1). Reed will be permitted to proceed on Eighth Amendment claims against three defendants who were personally involved with this incident, but any other intended claims will be dismissed.

### I. BACKGROUND

The complaint, including Reed's attached statement of facts (*see* Docs. 13, 13-1) alleges as follows: On April 17, 2025, Reid was incarcerated in the Behavioral Adjustment Unit ("BAU") at the York County Prison. At 8 p.m., correctional officer McCutcheon escorted another inmate, Barry Eckert, to be housed with Reed. Eckert's jump suit

was allegedly covered with feces. McCutcheon also brought Eckert's mattress, which also had feces on it, into the cell. The smell of feces was "overpowering and terrible," and there were no cleaning supplies in the cell. Reed "requested that CO McCutcheon do something" about the feces on Eckert's person and mattress. McCutcheon's "nonverbals . . . indicated that he was aware of the strong odor of feces," but he allegedly "said there was nothing that could be done until morning." McCutcheon closed the cell door and left.

After McCutcheon left, Eckert unpacked his clothing bundle and allegedly produced a pair of boxers "that were covered in feces . . . semi-dried," and several other items "that were similarly filled with feces." At this point, "the odor/stench became unbearable." Eckert allegedly told Reed that he had soiled himself four of five days before, but staff (in Reed's words) "refused to provide any help or even an opportunity to clean himself up." Reed went to his cell door and yelled for help for approximately one hour, but "either no officers came around, or they came by and refused to help."

Reed placed the soiled clothes under the cell door, so they could be seen from the outside. He continued to scream loudly, demanding to see

an officer, kicking the door, and making "an extreme amount of commotion." "[A]t least one" officer approached the cell, "only to cringe when he saw the soiled boxers and turn away," without intervening. Finally, McCutcheon approached the cell with Shift Supervisor Bowser. The cell door was opened and Reed threw the soiled clothes and mattress out of the cell. Reed allegedly "overheard CO McCutcheon admit to SS Bowser that he was aware of the feces, but was worried about getting sued if he did not give Eckert all of his belongings."

McCutcheon then attempted to put Eckert's mattress back into the cell. Reed "did not allow that to happen," and a "shoving match" ensued. Later that night, another officer, CO John Doe, spoke to Reed about this incident. Doe allegedly said: "If the guy . . . is OK to lay around in his own filth for a week, why should I care?" Reed asked: "What about putting me in that situation?", but this question "was never answered." Doe brought out a replacement mattress and bedding set, but Doe denied Reed's request for cleaning supplies. Reed was left to "moisten wads of toilet tissue . . . to pick up" the feces. The following day, he was allegedly made to eat breakfast and lunch in this same cell.

The remainder of Reed's complaint and exhibits describe his efforts

to pursue administrative remedies at the York County Prison. In response to his grievance, the Deputy Warden found that Reed's cellmate had "soiled himself during the night," and acknowledged an unspecified "delay" in providing a shower and clean clothes "due to the time of day and needing prior approval." However, the prison's investigation found no "corroborating evidence" for Reed's claim that officers ignored the situation, and "no evidence of harm or negative effects" to Reed from this incident. *See* (Doc. 13-2 at 22-25).

Reed also links this incident to a simultaneous grievance process from a prior disciplinary sanction he received for possession of contraband in the prison. In that matter, he had been sanctioned for what he describes as a "narcotics possession charge."[1] Reed was found guilty after a hearing, but he argues that "an investigation" was never held. In an appeal response dated April 21, the "Deputy Warden's response"[2]

---

[1] The complaint and exhibits are unclear as to the precise disciplinary charge; the prison's final response on the matter described it as "possession of contraband and narcotics." *See* (Doc. 13-2 at 35).

[2] Both the April 21 and July 29 responses are labeled as the "Deputy Warden['s] response," although the July 27 response indicates that the prior response was drafted by another officer. *See* (Doc. 13-2 at 35 (noting that the original appeal "was answered by Treatment Supervisor Horner")).

indicated that "[l]ong story short, contraband was found in your cell," and as the sole occupant of that cell, Reed was responsible "to check his cell for contraband," regardless of who placed it there: "Whether it was drugs or not is irrelevant to me, because it was contraband." (Doc. 13-2 at 31). On July 29, after a further appeal, the Deputy Warden found that Reed's "possession of a white powdery substance" had been sufficient evidence to justify the initial sanction, but "based on the totality of the circumstances," including a subsequent test showing that the substance was negative for narcotics, the sanction was quashed and charges removed from Reed's record. Reed argues that the failure to conduct this investigation at an earlier stage of the appeal process was retaliation for his prior grievance.

Reed now asserts that the issues described in this complaint have resulted in exacerbation of PTSD symptoms, anxiety, insomnia, and gastrointestinal issues. He asserts Eighth Amendment claims against McCutcheon, Bowser, CO John Doe, Deputy Warden Johnston, and seven other individuals who were involved in the grievance process or hold supervisory authority at the prison. He requests declaratory and monetary relief.

## II.   LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a

motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Reed asserts claims under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III. DISCUSSION

### A. Eighth Amendment

Reed plausibly asserts Eighth Amendment conditions of confinement claims. The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency," including deprivations of "the minimal civilized measure of life's necessities." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). The conditions must pose a "substantial risk of serious harm," and the relevant "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

There is no precise standard for what degree of exposure to feces is sufficient to sustain an Eighth Amendment claim. However, courts have frequently permitted such claims to proceed at the pleading stage.[3]

---

[3] *See, e.g.*, *Rosa-Diaz v. Harry*, No. 1:17-CV-2215, 2018 WL 3432547, at *8 (M.D. Pa. June 14, 2018) (noting that such claims "often entail an assessment of the actual physical circumstances of an inmate's confinement . . . [which may] entail consideration of factual matters beyond the pleadings"); *Henry v. Overmyer*, No. CIV.A. 10-189, 2013 WL 3177746, at *2 (W.D. Pa. June 24, 2013) ("Sanitation is one of the basic human needs recognized by Eighth Amendment cases . . . [and] exposure to human waste carries particular weight in the conditions calculus.")
*(continued on next page)*

Reed's allegations that he was made to sleep and eat in a cell covered with feces, had to try to clean the feces on his own without proper supplies, and suffered physical and mental distress, plausibly suggest an Eighth Amendment claim.

The complaint indicates that McCutcheon, Bowser, and CO John Doe, all of whom were present at Reed's cell during this incident, are appropriate defendants for this claim. However, Reed states no viable Eighth Amendment claim against the remaining defendants, who were involved only to the extent that they hold supervisory roles or participated in the grievance process.[4] *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("review and denial" of grievances does not establish personal involvement); *Burnside v. Moser*, 138 F. App'x 414, 416

---

(quotations and citations omitted); *see also Conway v. Rivello*, No. 3:24-CV-427, 2025 WL 308129, at *5 (M.D. Pa. Jan. 27, 2025) (permitting a claim based on exposure to feces for "less than one hour," based on the plaintiff's allegations of harm suffered).

[4] To the extent Reed attempts to assert Eighth Amendment claims premised on various supervisory defendants' "fail[ure] to adequately train and supervise" the officers, he has not pled facts demonstrating how any violation was caused by a failure of training or supervision, how the training or supervision was deficient, or why the defendants were personally responsible for the specific failures. *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

(3d Cir. 2005) (failure to properly process a grievance does not itself support a constitutional claim); *Rode*, 845 F.2d at 1207.

To the extent Reed intended to assert a First Amendment retaliation claim premised on his contraband sanction, that claim is not viable as pled. To state a *prima facie* retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

In this case, Reed's disciplinary sanction preceded the incident with Eckert, so the "failure to investigate" the contraband was not caused by that incident. *See Spurell v. Lazusky*, No. 4:25-CV-01510, 2025 WL 2977122, at *3 (M.D. Pa. Oct. 21, 2025) ("Retaliation—by definition—can only occur after and because of the protected conduct."). While Reed's exhibits indicate that later testing of the substance was ultimately favorable to him, the prison's initial refusal to conduct further

investigation in response to his grievance does not plausibly suggest a retaliatory motive. *See Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) (the existence of "some evidence" for the disciplinary findings "checkmates" any claim of retaliatory discipline); *Spurell*, 2025 WL 2977122, at *3 n.32 (denial of grievances, or inadequate responses to grievances, are not themselves adverse actions for retaliation purposes).

## IV.  CONCLUSION

For the foregoing reasons, Reed will be permitted to proceed on Eighth Amendment conditions of confinement claims against McCutcheon, Bowser, and C.O. John Doe. An appropriate order follows.

Dated: December 15, 2025           *s/Joseph F. Saporito, Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States District Judge